UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tara J. Brown,

    Plaintiff,

-v-                                            Case No. 2:10-cv-459

Honda of America,                    Judge Michael H. Watson

    Defendant.

## OPINION AND ORDER

Plaintiff asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and analogous provisions of Ohio Revised Code Chapter 4112, arguing Defendant discriminated against her because of her disabilities when it terminated her employment. Defendant moves for summary judgment. ECF No. 30. For the following reasons, the Court grants Defendant's summary judgment motion.

## I. BACKGROUND

### A. The Parties

Plaintiff Tara Brown was, during the relevant period, an employee of Defendant Honda of America ("Honda"). She asserts she has three conditions which qualify as disabilities within the meaning of the ADA: depression, anxiety, and migraine headaches.[1] Defendant Honda makes cars and is an employer

---

[1] For purposes of its motion for summary judgment only, Honda does not dispute that Brown is disabled within the meaning of the ADA.

within the meaning of the ADA.

**B. Brown's Employment and Termination**

Brown worked as a Production Associate at Honda's East Liberty, Ohio Plant for fourteen years until Honda terminated her employment in February 2009. Honda states it terminated Brown because her excessive unexcused absences from work violated the company's attendance policy.

Honda asserts that regular and reliable attendance is an essential function of a Production Associate's job, which entails working on assembly and sub-assembly lines in the production of vehicles, engines and components. If a Production Associate is absent from work, the department leadership must locate another employee to perform the absent Production Associate's job on the assembly line. To that end, Honda's policy requires 100% work attendance, and associates whose attendance falls below 99% are subject to progressive discipline which may ultimately result in termination. Nonetheless, Honda imposes discipline only for *un*excused absences from work. Excused absences, including approved FMLA leaves, are not counted against an associate's attendance record. In addition, associates are provided fifteen vacation days each year and an additional fifteen days for holidays and factory shutdowns.

Honda asserts, and Brown does not dispute, that Brown had attendance problems throughout her career with Honda. In 2003, after a large number of unexcused absences, Honda placed Brown on its Attendance Improvement

Program ("AIP") which required a phased-in reduction of unexcused absences over the course of twelve months.

In 2007, Brown asked Honda to approve intermittent leaves of absence for anxiety, depression, and migraine headaches. Her physician, Dr. Delia Herzog, certified Brown would need to be absent from work from January 15, 2007 through July 16, 2007 at a frequency of one to two times per month with a duration of one to two days per episode. Honda approved the leaves.

Brown then asked for intermittent leaves of absence from July 23, 2007 to December 1, 2007 at a frequency of one to three times per month for a duration of one to two days per episode. Dr. Herzog certified the request on the bases of Brown's depression, anxiety, and migraine headaches. Honda again approved Brown's request.

Brown missed fifty-one days of work in 2007 under the two approved intermittent leaves. Honda states it became suspicious because Brown frequently took intermittent leaves on days immediately before or after weekends.

In January 2008, Brown asked for intermittent leaves of absence for the entire year of 2008 at a frequency of one to three times per month for a duration of one to two days per episode. Once again, Dr. Herzog certified Brown's request on the bases of Brown's depression and anxiety. Honda approved the request initially.

Honda avers that in early 2008, Brown began to exceed her approved leaves both in frequency and duration. For that reason, as well as Honda's suspicions about Brown's tendency to take leave immediately before and after weekends, Honda asked Brown to undergo an evaluation and obtain a second opinion as permitted by the FMLA. Psychiatrist Richard Clary, M.D. then examined Brown and provided a second opinion on her request for intermittent leaves for depression and anxiety. Following the examination, Dr. Clary issued a report in which he concluded Brown's depression and anxiety required her to be absent from work at a frequency of two times per month with a duration of one day per episode.

After Brown missed work on more days than Dr. Clary certified, she requested a third opinion, which was binding pursuant to an FMLA regulation, 29 C.F.R. § 825.307(b). Psychologist Donald Tosi, PhD., then examined Brown and issued a report stating that Brown would need to miss work as a result of her depression and anxiety at a frequency of one to two times per month with a duration of one day per episode.

From January 2008 through May 2008, Brown exceeded the frequency and duration of leave certified in the second and third opinions for a total of twelve days of unexcused absences. As a result, on July 16, 2008, Honda placed Brown on its Attendance Commitment Program ("ACP"). The ACP program is Honda's "last chance" step before termination. It requires an associate to have

no more than one unexcused absence in a twelve month period.

In September 2008 Brown requested intermittent leaves for migraine headaches in addition to the leave already approved for depression and anxiety. Dr. John Crankshaw certified Brown would need to be off work one day per month due to her migraine condition. Brown exceeded that frequency in the first month, missing three days for migraine headaches. For that reason, and because Brown continued to take leave immediately before and after weekends, Honda again requested Brown to undergo a second opinion. Dr. Ken Mankowski, a neurologist, examined Brown and opined her migraine condition would require her to miss work at a frequency of one day per month for a duration of one to twelve hours per episode. Brown requested a third opinion and was examined by a neurosurgeon, Dr. William Smith, who indicated Brown's migraines would require her to miss work at a frequency of two times per month for a duration of three to four days per episode.

Despite the increased certification provided by Dr. Smith, Brown exceeded the frequency limitation on her approved leave in October and December 2008 because she was absent from work for migraines on more than two occasions during both of those months. As a result, Honda terminated Brown's employment on February 11, 2009.

As part of Honda's termination process, a separated employee may elect to have the termination decision reviewed by an associate review panel or a senior

management review panel. A majority of members of either panel may vote to reinstate employment. Brown elected review by the associate review panel. That panel upheld Honda's decision to terminate Brown's employment.

**C. Procedural History**

Plaintiff filed this action on May 24, 2010, asserting claims under the ADA, Ohio Revised Code Chapter 4112, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* The Court dismissed Brown's FMLA claims on March 24, 2011 pursuant to Honda's motion for judgment on the pleadings on the ground Brown voluntarily released those claims. ECF No. 16.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all

reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d. 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves*, 530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III. DISCUSSION

Honda argues it is entitled to summary judgment in its favor because Brown cannot satisfy an essential element of a prima facie case of disability discrimination. Specifically, Honda contends Brown cannot show she is qualified for the position because her unexcused absences from work rendered her unable to perform the essential functions of her job with or without a reasonable

accommodation. Brown asserts Honda failed to provide her a reasonable accommodation of her disabilities when it terminated her employment for exceeding only the frequency limitation on her approved FMLA intermittent leaves. She also maintains Honda violated the ADA by allowing a peer panel of her co-workers to review her termination without first instructing the panel on the concept of reasonable accommodation under the ADA.

> Title I of the ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a prima facie case of employment discrimination through indirect evidence under Title I, a plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir.2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996)).

*Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011).[2]

Here, Honda challenges the second element of the prima facie case, arguing Brown cannot show she was qualified for the job. Under the ADA, an individual is qualified for the job if she can perform the essential functions of that job with or without a reasonable accommodation. 42 U.S.C. § 1211(8). Honda

---

[2]The parties agree the same principles apply to Brown's disability discrimination claims brought under Ohio Revised Code Chapter 4112. *See Brennenman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004).

maintains Brown's inability to reliably attend work renders her unable to perform the essential functions of her job as a Production Associate. Honda also avers it reasonably accommodated Brown's disabilities by affording her leave based on her needs as assessed by medical and mental health professionals in accordance with the requirements of the FMLA. Thus, Honda maintains, Brown is unable to perform the essential functions of her job with or without an accommodation.

In support of its argument, Honda cites authority from, *inter alia*, the Seventh Circuit, which has stated, "in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance at the job site is a basic requirement of most jobs." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999).

> Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job. This is especially true in factory positions, . . . where the work must be done on the employer's premises; maintenance and production functions cannot be performed if the employee is not at work.

*Jovanovic v. In-Sink-Erator*, 201 F.3d 894, 899–900 (7th Cir. 2000). *See also* *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943 (7th Cir. 2001). The Sixth Circuit Court of Appeals likewise recognizes "'[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified'

individual protected by the ADA.'" *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 419 (6th Cir. 2004) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998)).

Brown does not cogently dispute that regular attendance is an essential function of her factory job. Rather, she presents a somewhat more nuanced argument that Honda failed to provide her a reasonable accommodation. Brown notes she was terminated for exceeding the *frequency* limit of her approved FMLA leave but not the *duration* limit. Specifically, Dr. Smith certified Brown to require time off work at a frequency of two times per month with a duration of three to four days per episode. Hence, while Brown was absent from work for migraines more than twice each month in October and December of 2008, she did not use the potential maximum of eight days for migraines in either month. In other words, Brown argues she was entitled to have Honda ignore the frequency limit on her FMLA leave as a reasonable accommodation. Stated otherwise, Brown would require Honda to allow her eight days off work every month for migraines at a frequency of up to eight times each month as opposed to only twice per month.

The Court rejects Brown's argument. As the court in *Waggoner* observed:

> the absence of employees is disruptive to any work environment. However, it is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibilities that may lead to a finding that an employee is unable to perform the duties of his job.

169 F.3d at 484 (quoting *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 602 (7th Cir.1998)). A business is not obligated to endure erratic, unreliable attendance by its employees. *Id.* Doing away with the frequency component of Brown's intermittent leave would render her attendance more unreliable and erratic by a factor of four–eight potential separate intermittent leaves per month for migraines rather than the certified two. As a matter of law, that is not a reasonable accommodation for a Production Associate working at a factory assembly line and would constitute an undue burden on Honda. *See Jovanovic*, 201 F.3d at 899–900. Consequently, the Court finds Honda did not fail to provide Brown a reasonable accommodation for her disabilities. Rather, it provided her exactly the accommodation mental health and medical professionals said she needed. As a result of her absenteeism, the Court concludes Brown is unable to demonstrate she can perform the essential functions of her Production Associate job with or without a reasonable accommodation.

Brown's remaining argument is that Honda violated the ADA by limiting the scope of the Associate Review Panel's review to whether she violated Honda's attendance policy. She contends the panel should have been allowed to consider whether she was entitled to further accommodations for her disabilities. Brown cites no authority for her argument. As Honda points out, instructing a panel of laypersons on the intricacies of ADA law on reasonable accommodations is neither feasible nor desirable. Requiring employers to do so would destroy the

incentive to allow the remedy of reinstatement by peer review. Honda made the determination that it had already provided Brown as much accommodation as the law required, and indeed those accommodations were extensive. The ADA requires no more of an employer.

In sum, the Court holds as a matter of law that Honda reasonably accommodated Brown's disabilities, but even with those accommodations, Brown's absenteeism rendered her unable to perform the essential functions of her job as a Production Associate as a matter of law. Honda is therefore entitled to summary judgment on Brown's disability discrimination claims.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** Defendant's motion for summary judgment. ECF No. 30.

The Clerk shall enter final judgment in favor of Defendant, and against Plaintiff, dismissing this action in its entirety with prejudice.

The Clerk shall remove ECF No. 30 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT